IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT W. WINKEL,

     Petitioner,

v.                                           Case No. 5:14-3214-JTM

WARDEN JAMES HEIMGARTNER,

     Respondent.


**MEMORANDUM AND ORDER**

The court previously screened this pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 1) and Motion for Conditional Release (Dkt. 3). On July 6, 2015, the court entered a Show Cause Order requiring petitioner Robert W. Winkel to show cause as to why his petition for habeas corpus should not be dismissed as procedurally defaulted and to present any extraordinary grounds warranting his conditional release. Dkt. 7. Upon review of petitioner's Responses, filed on July 22, 2015 (Dkts. 8, 9), and the balance of the record, the court finds that because petitioner failed to timely present a petition for review to the Kansas Supreme Court, his current habeas claims are barred by procedural default. Additionally, petitioner's Motion for Conditional Release is denied.

**I.       Procedural History and Background**

The following factual background is quoting from *State v. Winkel*, 322 P.3d 1026 (Kan. Ct. App. 2014).[1]

---

[1] State court factual findings are presumptively correct and may be rebutted only by "clear and convincing evidence." *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

On December 30, 2010, Robert Winkel asked Dena Gartleman, his step-sister, for a ride from Kingman to Anthony and requested she go by his home in Cleveland to pick up some of his things.  When the two of them arrived at his house in Cleveland, he took the keys out of the ignition and took her purse, telling her he did not want her to leave.  She followed him inside to get her keys and purse back.

Gartleman was able to get her keys and tried to go back home to Kingman, but Winkel put the car in park and the two struggled.  Winkel obtained control of the keys, grabbed Gartleman by the throat, and threw her into the back seat.  When she tried to leave the car, Winkel pulled her back in, choked her, and head-butted her.  She testified that once Winkel head-butted her, she became "frightened of [Winkel's] irrational behavior" and "couldn't believe" he had hurt her after taking her keys.  Gartleman ultimately required stitches on her nose.

On the way to Anthony, Winkel was driving Gartleman's car without her permission and damaged the car stereo and the steering wheel with his fist.  Gartleman repeatedly asked to be let go, but Winkel would not let her out of the car.  He drove around for a couple of hours.  Winkel finally took Gartleman to their mother's house in Anthony where she contacted law enforcement and called an ambulance to go to the hospital.

Winkel was arrested and charged with one count each of aggravated kidnapping, aggravated battery, criminal damage to property, and criminal deprivation of property.  Winkel's counsel filed a motion to determine competency, and the district court ordered a competency evaluation at Larned State Security Hospital.  Winkel was determined to be competent to stand trial.  Winkel was refusing to work with his attorney and a second motion for competency evaluation was filed.  The district court referred Winkel to Horizons Mental Health Center in Hutchinson for evaluation.  Following receipt of the Horizons Mental Health Center report and an evidentiary hearing, Winkel was again determined to be competent to stand trial.  Winkel pled not guilty on February 3, 2012.  His jury trial was scheduled for April 9, 2012.

Winkel represented himself and testified:

- He had permission to drive Gartleman's car;

- She was asleep in the back seat due to her diabetes;

- She had blood on her face when she climbed up into the front seat;

- He believed she injured herself; and

- Her motive for injuring herself and blaming him was that he damaged the roof of her shed and that "over the past 15 years, . . . there's been a lot of stuff."

During his trial, Winkel wanted to admit an EMS report into evidence. The State objected, and the district court denied the report's admission as hearsay because no EMS personnel were present at trial. Winkel stated that he did not have any EMS personnel subpoenaed because he knew Dr. Earl George, the emergency room physician who treated Gartleman, would be present and thought he could use him to admit it.

*Winkel*, 322 P.3d at *1-3.

Winkel was found guilty on all four counts and timely appealed, alleging three assignments of error: (1) insufficient evidence to support his conviction for aggravated kidnapping, (2) denial of his right to present his theory of defense, and (3) violation of his right to a speedy trial. *Id.* at *3-4. Based on the state court record, it appears petitioner failed to timely present the claims in his direct appeal to the Kansas Supreme Court.

On November 14, 2014, petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, alleging the following nine assignments of error: (1) deprivation of his constitutional guarantee to conflict-free counsel, (2) abuse of discretion by trial judge in finding petitioner incompetent to stand trial, (3) failure of trial judge to inquire and disqualify the court-appointed lawyer for conflict of interest, (4) violation of his right to refuse anti-psychotic drugs, (5) jail harassment, (6) lack of access to legal research, (7) compulsory process, (8) deprivation of his right to present evidence establishing reasonable doubt, and (9) insufficient evidence to support his conviction of aggravated kidnapping as a matter of law and common sense. Dkt. 1. Petitioner requests that this court reverse his convictions and assess all court costs to the state. Dkt. 1, at 26.

## II.      Petitioner's Responses

Petitioner filed two Responses on July 22, 2015.  Dkts. 8, 9.  The first response deals

solely with his failure to exhaust state remedies.  Petitioner alleges that he gave his petition for

review to the Kansas Supreme Court to prison authorities to mail on May 9, 2014, thereby

satisfying the "state prison mailbox rule."  Dkt. 8, at 2.  He also claims that his allegedly filed

petition was wrongly returned by the Kansas Supreme Court for failure to submit the requisite

number of copies, a problem that petitioner alleges was related to "facility issues outside of [his]

control[]."  Dkt. 8, at 2.

In his second Response, addressing his Motion for Conditional Release, petitioner argues

that he has substantial constitutional issues that are likely to prevail, including: (1) failure of the

trial judge to inquire into any of petitioner's objections relating to a conflict of interest with his

court-appointed lawyer, (2) assertion by lawyer and prosecutor that petitioner was incompetent

due to his exercise of his right to remain silent, (3) violation of his right to not be "arbitrarily

confined in a nut-house," (4) denial of his right to refuse anti-psychotic "dope," (5) denial of

access to legal research, and (6) denial of his right to obtain witnesses.  Dkt. 9, at 2-3.  Petitioner

also argues the presence of extraordinary or exceptional circumstances because "it is uncontested

that this whole legal thing started because [his] ex-girlfriend's mother said she would help me

with a ride to jail to terminate my probation and do my remaining time in jail."  Dkt. 9, at 3.[2]

## III.      Discussion

### A.      Procedural Default

It is well-settled that a state prisoner must satisfy the exhaustion prerequisite set forth in

28 U.S.C. § 2254(b)(1) before filing a federal habeas corpus application.  This "means that each

of his federal claims must have been presented to the highest state court by way of either direct

---

[2] Petitioner also alleges that his past court-attendance record only contains tardies, not absences.  Dkt. 9, at 3.

appeal or state post-conviction proceedings." *Kleiner v. Kan.*, 2014 U.S. Dist. LEXIS 92257, at *6 (D. Kan. July 8, 2014).  When a habeas petitioner fails to properly exhaust a claim in state court and those remedies are no longer available at the time of his federal habeas petition, the petitioner meets the technical requirements for exhaustion.  *Id*. at *6-7 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)); *accord Anderson v. Sirmons*, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007).  An unexhausted claim becomes subject to dismissal under the doctrine of procedural default.  Under this doctrine, "review by a federal habeas court of claims that were procedurally defaulted in state court is barred, unless the applicant can demonstrate either cause and prejudice for the default or that a fundamental miscarriage of justice would result if his claim is not considered."  *Kleiner*, 2014 U.S. Dist. LEXIS 92257, at *7 (citing *Coleman*, 501 U.S. at 724, 750); *accord Fairchild v. Workman*, 579 F.3d 1134, 1141 (10th Cir. 2009).

Here, there is absolutely no indication on the state court's docket sheet that petitioner ever sought review in the Kansas Supreme Court in his direct appeal.  Indeed, petitioner acknowledges that his petition for review was rejected on procedural grounds.[3]  Nor is there any evidence in the state court record of any post-conviction proceedings.  This therefore subjects petitioner's claims to procedural default, absent a showing of cause and prejudice or evidence of a fundamental miscarriage of justice.

The "cause" standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Examples of external factors include the discovery of new evidence, a change in the law, or interference by state officials.  *Id*.  Here, petitioner alleges that he gave his petition for review to the Kansas Supreme Court to prison officials three days before the filing

---

[3] According to petitioner, "[a]lthough timely filed . . . the petition for review [to the Kansas Supreme Court] was denied due to petition not being (i) at the court clerk's office the day prior and (ii) me not sending more than original petition (due to facility issues)."  Dkt. 1, at 4.

deadline, on May 9, 2014, which, petitioner argues, satisfies the "prison mailbox rule."  Dkt. 8, at 2.

The "prison mailbox rule" was first articulated by the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 276 (1988), and states that "a pro se prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents."  *Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005); *see also* FED. R. APP. P. 4(c)(1) (incorporating mailbox rule for an inmate's "notice of appeal in either a civil or a criminal case").

To claim the benefit of the rule, a prisoner bears the burden of proving that the pleading in question was timely filed.  *Price*, 420 F.3d at 1165.  There are only two ways a prisoner may establish timely filing.  *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143 (10th Cir.), *cert. denied*, 543 U.S. 1005 (2004).  First, "if the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule."  *Id*. at 1144.  Second, if the inmate does not have access to a legal mail system, the "mandatory method by which a prisoner . . . proves compliance with the mailbox rule" is to "submit a declaration [in compliance with 28 U.S.C. § 1746] or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid."  *Id*. at 1145; *see also United States v. Smith*, 182 F.3d 733, 735 n.1 (10th Cir. 1999) (refusing to apply mailbox rule to pro se inmate's notice of appeal because declaration of timely filing did not state that first-class postage had been prepaid).

Here, petitioner includes a signed statement from Terence Belcher, the Unit Team Counselor at the Lansing Correctional Facility, stating that, on May 9, 2014, petitioner handed him the "Petition for Review" in two sealed envelopes, one of which was addressed to the

6

Kansas Supreme Court and the other to Matthew W. Ricke.  Dkt. 8, at 9.  Each envelope had all the required forms, which Belcher also signed.  Dkt. 8, at 9.  Petitioner also included an "Account Withdrawal Request," from the Kansas Department of Corrections, dated May 9, 2014, requesting funds for "Legal/Official Postage."  Dkt. 8, at 10.

There are three problems with petitioner's evidence in support of his compliance with the prison mailbox rule.  First, Belcher's statement does not meet the requirements of 28 U.S.C. § 1746.  Compliance with this statute requires a "declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true *under penalty of perjury*, and dated."  28 U.S.C. § 1746 (emphasis added).  Belcher's statement, which is drafted in petitioner's handwriting, does not include *anything* about penalty of perjury; nor does it include the date on which it was signed.  Dkt. 8, at 9.  Second, the declaration does not include any statement about first-class postage or such postage being prepaid.  *See Smith*, 182 F.3d at 735 n.1.  Third, "[g]enerally, when an inmate has handed legal mail to a prison official for mailing to a court, agency records are generated."  *Jones v. Heimgartner*, 2014 U.S. Dist. LEXIS 114970, at *14 (D. Kan. Aug. 19, 2014).  Petitioner has not attached a copy of a prison log of outgoing mail, which might confirm that his legal mail was indeed surrendered for mailing on May 9, 2014, as he claims.  Petitioner does not present any *official* prison document substantiating that he delivered the pleadings for mailing, just the statement that petitioner drafted and Belcher signed.[4] The court therefore declines to find that petitioner satisfied the prison mailbox rule.

Even giving petitioner the benefit of the doubt with regard to cause, he still fails to establish prejudice.  Under this prong, a petitioner must show "'actual prejudice' resulting from

---

[4] Petitioner also submitted his own "affidavit" alleging that he handed his petition for review to prison officials on May 9, 2014, and that he could not submit the requisite nine (9) copies because of "facility issues outside of [his] control."  Dkt. 8, at 12.  While not notarized, petitioner's "affidavit" was made under "penalty of perjury" and is dated.  However, there is still no indication of pre-pad first-class postage.

the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). In other words, a petitioner must demonstrate "a reasonable probability that, but for the alleged error, the result of the proceeding would have been different." *Barber v. McKune*, 2014 U.S. Dist. LEXIS 79444, at *7 (D. Kan. June 11, 2014) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 363 (1992) (internal brackets omitted from *Barber*)). Petitioner alleges "actual prejudice" because "it is fundamentally unfair for the court to not give a[] prisoner—dependent upon the prison—the option to BE ABLE to correct any shortcomings due to the prison after original was timely filed." Dkt. 8, at 2-3 (emphasis in original). Additionally, petitioner alleges that he has "absolutely no legal redress for unconstitutional, illegal, and fundamentally unfair convictions and ongoing confinement." Dkt. 8, at 3. Neither of these alleged justifications rises to the level of actual prejudice. Petitioner makes no allegation that, absent his asserted errors, there is a reasonable probability that the results of his proceedings would have been different.

Nor can petitioner demonstrate that a fundamental miscarriage of justice would occur were this court to deny his petition on procedural default grounds. A "fundamental miscarriage of justice" requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). "The claim of actual innocence must be based upon solid evidence that was not adduced at trial." *Washington v. Roberts*, 2015 U.S. Dist. LEXIS 39844, at *34 (D. Kan. Mar. 30, 2015) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). This exception is rare and will "only be applied in the extraordinary case." *Schlup v. Delo*, 513 U.S. 298, 322 (1995).

Here, petitioner focuses on the trial court's alleged error in failing to allow him to introduce an EMS report. Petitioner claims that this report is "the only evidence I have besides

my word that says that I am <u>not</u> the guilty party." Dkt. 8, at 5 (emphasis in original). This simply is not enough to carry the burden of establishing actual innocence.

Therefore, having reviewed the evidence in the record, as well as the contents of petitioner's Response, the court finds that petitioner's presentation is no more than his continuing profession of innocence.   Accordingly, petitioner's application for habeas corpus relief is denied on the grounds of procedural default.

**B.      Motion for Conditional Release**

It is recognized that "a federal district court has inherent authority to release an inmate on bail or surety pending the court's decision on a petition for writ of habeas corpus." *Johnson v. Nelson*, 877 F. Supp. 569, 570 (D. Kan. 1995) (citing *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981)).   The standard for granting such relief is high.   "Generally, a court must determine whether the petitioner has raised a substantial constitutional issue on which he is likely to prevail, and whether extraordinary or exceptional circumstances exist which either warrant the requested relief or require release to make the writ of habeas corpus an effective remedy." *Id.* (citing *Martin v. Solem*, 801 F.2d 329, 329 (8th Cir. 1986)).

As the court has previously decided that petitioner's habeas claims have been procedurally defaulted, and the record does not suggest that this matter presents any extraordinary grounds that might warrant release at this point, the court adopts the previous recommendation that petitioner's Motion for Conditional Release (Dkt. 3) be denied.

### IV.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Pursuant to 28 U.S.C. § 2253, the court may issue a

certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy the standard by demonstrating that "the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings." *Kelley v. Pryor*, 2014 U.S. Dist. LEXIS 168229, at \*16 (D. Kan. Dec. 3, 2014) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000)). In addition, when the court's ruling is based on procedural grounds, as it is here, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack*, 529 U.S. at 484).

The court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the court's ruling in the dismissal of this action as procedurally defaulted is debatable or incorrect.

**IT IS THEREFORE ORDERED**, this 31st day of August, 2015, that petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 1) is hereby dismissed as procedurally defaulted and that a certificate of appealability is denied.

**IT IS FURTHER ORDERED** that petitioner's Motion for Conditional Release (Dkt. 3) is hereby denied.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE